■ TOWN OF PLEASANT VALLEY, Petitioner, v WASSAIC DEVELOPMENTAL DISABILITIES SERVICES OFFICE et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent Acting Commissioner of the State Office of Mental Retardation and Developmental Disabilities, dated November 13, 1981, who, after a hearing, found that the establishment of two community residence facilities at contested locations would be appropriate. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. Pursuant to the requirements of former subdivision (b) of section 41.34 of the Mental Hygiene Law, the Wassaic Developmental Disabilities Services Office (sponsoring agency), sent written notices to the Town of Pleasant Valley (town) of its intent to establish within the town two community residential facilities for mentally retarded and developmentally disabled individuals. The notification failed to indicate the areas where the proposed residences would be located, but the town was advised informally of two proposed sites, on Gasparro Drive and Tyrrel Road. On or about August 13, 1981, the town objected to the proposed sites, and demanded a hearing. The hearing was conducted on October 13, 1981, 61 days after the request, and the determination is dated November 13, 1981, 31 days after the hearing. At that hearing, the hearing officer excluded evidence of the suitability, nature and character of the proposed sites. However, the need for such facilities and the concentration of such facilities and other similar facilities in the town and its environs were fully explored. The acting commissioner of the State Office of Mental Retardation and Developmental Disabilities rejected the town's objections, and this proceeding ensued. The town contends, *inter alia,* that it did not receive adequate notice of respondents' intentions, and did not waive a timely hearing and determination on its objections. Section 41.34 of the Mental Hygiene Law was enacted, *inter alia,* to foster "communication and cooperation between the various state agencies, local agencies, and local communities * * * by establishment of clearly defined procedures for the selection of locations for community residences" (see L 1978, ch 468, § 1). Paragraph (1) of former subdivision (b) of section 41.34 of the Mental Hygiene Law (L 1978, ch 468, § 2) provided: "If a sponsoring agency plans to establish one or more residential facilities for the disabled within a municipality, it shall notify the chief executive officer of the municipality in writing of its intentions and include in such notice a description of the nature, size and the community support requirements of the program. The sponsoring agency may recommend one or more sites which meet the requirements of the program." When the municipality objects, on the grounds, *inter alia,* that "establishment of a facility * * * would result in such a concentration of community residential facilities for the mentally disabled or combination of such facilities and other facilities licensed by other state agencies that the nature and character of areas within the municipality would be substantially altered" it may demand a hearing, and "[t]he commissioner shall * * * conduct such a hearing within fifteen days of such a request" (see Mental Hygiene Law, § 41.34, subd [c], par [5] formerly subd [b], par [5]). Section 41.34 (subd [c], par [5]) further provides that "[t]he commissioner shall make a determination

within thirty days of the hearing." Respondents note that pursuant to paragraph (1) of former subdivision (b) of section 41.34 of the Mental Hygiene Law, "[t]he sponsoring agency may recommend one or more sites which meet the requirements of the program", but is not required to do so. The legislation was written in contemplation of two situations: (1) the sponsoring agency has not selected a location, and leaves it to the municipality to suggest possible sites (see *Town of Pound Ridge v Introne,* 81 AD2d 885; *Matter of Town of Stony Point v New York State Off. of Mental Retardation & Developmental Disabilities,* 78 AD2d 858) or (2) the sponsoring agency has selected a location, and gives the municipality the option of suggesting alternative sites. In the instant case, the sponsoring agency had in fact selected two sites, on Gasparro Drive and Tyrrel Road, respectively. Section 41.34 permits only a limited review of the sponsoring agency's decision. Indeed, "[t]he sole issue to be resolved at a hearing to contest the appropriateness of the establishment of a community residence facility pursuant to section 41.34 of the Mental Hygiene Law is whether 'the nature and character of the area in which the facility is to be based would be substantially altered as a result of the establishment of the facility'" (see *Matter of Town of Greenburgh v Coughlin,* 73 AD2d 672). However, if the municipality is to be afforded a meaningful opportunity to explore this issue at the hearing, it must be made privy to any decisions reached by the sponsoring agency with respect to proposed sites. In the instant case, the sponsoring agency did not give the town written notice of its proposed sites, even in broad geographic terms (cf. *Matter of Community Planning Bd. No. 18 v Introne,* 84 AD2d 564). Indeed, it appears that the sponsoring agency intentionally omitted any reference to the proposed sites from its written notice, for the purpose of limiting the scope of the hearing. In so doing, the sponsoring agency violated the letter and spirit of section 41.34. Significantly, section 41.34 has since been amended to explicitly state that "[w]hen a site has been selected by the sponsoring agency, it shall notify the chief executive officer of the municipality in writing" (Mental Hygiene Law, § 41.34, subd [c], par [1]). However, the town was informed informally of the proposed sites. In reaching a determination, the acting commissioner was required only to consider the "need for such facilities in the municipality * * * [and] the existing concentration of such facilities and other similar facilities" as defined in section 41.34 (subd [c], par [5]) of the Mental Hygiene Law. Thus, the question of the suitability of the proposed sites was not relevant, and evidence relating thereto was properly excluded. The town was not precluded from presenting evidence with respect to oversaturation of facilities in the town, or at the proposed sites. It is clear from the record that the establishment of the proposed facilities in the town would not cause an oversaturation of such facilities (see *Matter of Community Planning Bd. No. 18 v Introne, supra*). This was hardly a close case. Thus the sponsoring agency's failure to give the town adequate written notice of its intentions does not warrant the annulment of the acting commissioner's determination. Nor is the acting commissioner's failure to conduct a hearing within 15 days of the request, and his failure to render a determination within 30 days of the hearing, fatal to his determination. The question of whether a time requirement applicable to a governmental agency is directory rather than mandatory depends on whether the requirement "may be said to be an 'unessential particular' * * * or, on the other hand, relates to the essence and substance of the act to be performed" (see *Matter of King v Carey,* 57 NY2d 505). In this instance, the delay in conducting a hearing actually gave the town more time to prepare, and the brief delay in rendering a determination did not frustrate the purpose of section 41.34 to foster communication and co-operation between State and local agencies and

communities, and prevent an oversaturation of community residence facilities in any one area. Thus, these time requirements should be deemed directory and not mandatory (see *Matter of Grossman v Rankin,* 43 NY2d 493, 501). The determination was reached without undue delay, and, therefore, should not be annulled on that ground. We have considered petitioner's remaining contentions and find them to be without merit. Lazer, J. P., Gibbons, Niehoff and Boyers, JJ., concur.